40 F.3d 457
 309 U.S.App.D.C. 201, 63 USLW 2358,
1994 O.S.H.D. (CCH) P 30,631
 ENERGY WEST MINING COMPANY, Petitioner
v.
FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION; Secretary
of Labor, Mine Safety and Health Administration
(MSHA), Respondents.
American Mining Congress, Amicus Curiae.
 No. 93-1296.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Sept. 13, 1994.
Decided Dec. 2, 1994.
 
 Thomas C. Means, Washington, DC, argued the cause for petitioner. With him on the briefs were Timothy M. Biddle and J. Michael Klise, Washington, DC.
 Jerald S. Feingold, Atty., U.S. Dept. of Labor, Washington, DC, argued the cause for respondents. With him on the brief were W. Christian Schumann, Counsel, U.S. Dept. of Labor, Washington, DC. L. Joseph Ferrara, Washington, DC, entered an appearance for respondent Federal Mine Safety and Health Review Com'n.
 Arthur G. Sapper, Washington, DC, argued the cause for amicus curiae. With him on the brief was James A. Lastowka, Washington, DC.
 Before SILBERMAN, SENTELLE and ROGERS, Circuit Judges.
 Opinion for the Court filed by Circuit Judge SENTELLE.
 SENTELLE, Circuit Judge:
 
 
 1
 Petitioner Energy West Mining Company ("Energy West") challenges a Federal Mine Safety and Health Review Commission ("FMSHRC" or the "Commission") decision which upheld a Mine Safety and Health Administration ("MSHA") citation for failure to report an employee's injury suffered when his vehicle rolled into a ditch near a mine parking lot. An MSHA inspector cited Energy West for violating MSHA regulations which require mine operators to report all "occupational injur[ies]" at the mine site. 30 C.F.R. Sec. 50.20 (1993). Both an FMSHRC Administrative Law Judge ("ALJ") and the full Commission affirmed the citation. Because we find these reporting requirements to be a reasonable interpretation of Mine Act provisions, we affirm under Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).
 
 I. BACKGROUND
 
 2
 The Federal Mine Safety and Health Act of 1977 (the "Mine Act"), 30 U.S.C. Sec. 801 et seq. (1988), transferred authority to regulate health and safety in the nation's mines from the Secretary of the Interior to the Secretary of Labor, 30 U.S.C. Secs. 802(a), 811(a). The Secretary acts through the Mine Safety and Health Administration. 30 C.F.R. Sec. 50.1. The Act empowers the Secretary to "develop, promulgate, and revise as may be appropriate, improved mandatory health or safety standards for the protection of life and prevention of injuries in coal or other mines," 30 U.S.C. Sec. 811(a), and authorizes the Secretary to require mine operators to "establish and maintain such records, make such reports, and provide such information, as the Secretary ... may reasonably require from time to time to enable him to perform his functions under this chapter." 30 U.S.C. Sec. 813(h). In addition to delegating rulemaking authority, the Act grants enforcement authority to the Secretary, who, acting through MSHA, issues citations to mine operators for violations of Mine Act regulations. 30 U.S.C. Sec. 814(a). An aggrieved mine operator may contest a MSHA citation before the FMSHRC, an independent adjudicative body authorized to hear disputes arising under the Mine Act. 30 U.S.C. Secs. 815(d), 823.
 
 
 3
 After enactment of the Mine Act but before its effective date, the Secretary of the Interior promulgated 30 C.F.R. Part 50 regulations ("Part 50"), governing a mine operator's duty to report accidents, occupational injuries and occupational illnesses. Part 50 regulations require mine operators to report to MSHA any "occupational injury" within ten days of its occurrence. 30 C.F.R. Sec. 50.20(a). Part 50 defines "occupational injury" as
 
 
 4
 any injury to a miner which occurs at a mine for which medical treatment is administered, or which results in death or loss of consciousness, inability to perform all job duties on any day after an injury, temporary assignment to other duties, or transfer to another job.
 
 
 5
 30 C.F.R. Sec. 50.2(e).
 
 
 6
 Energy West operates the Deer Creek Coal Mine in Utah. On October 3, 1990, Donald Hammond, an employee at Deer Creek, was injured in an automobile accident at the mine. Shortly after Hammond drove through the entrance gate to mine property before his shift began, his personal automobile stalled, its brakes failed, and it rolled down the road and crashed in a drainage ditch. Hammond missed several days of work as a result of injuries suffered in the accident.
 
 
 7
 MSHA inspector Robert Huggins was at Deer Creek on the day of the accident and visited the accident site. Huggins asked a Deer Creek safety engineer, Kevin Tuttle, whether Energy West planned to report the incident to MSHA. Tuttle answered negatively, stating Energy West's belief that the injury was not reportable because Hammond was not working when the injury occurred. On November 1, 1990, after consulting his supervisors at MSHA and notifying Energy West that the injury was reportable, Huggins issued a citation charging Energy West with failure to report an "occupational injury" under 30 C.F.R. Sec. 50.20. Energy West abated the violation by filing an injury report on the same date.
 
 
 8
 Energy West sought review of the citation with the FMSHRC. The parties submitted the case to a Commission ALJ on briefs and stipulated facts. Reasoning that the injury was a reportable "occupational injury" because it was an injury to a miner on mine property, the ALJ affirmed the citation. Energy West Mining Co., 13 F.M.S.H.R.C. 1164 (1991). Energy West appealed to the Commission, which affirmed the ALJ. Energy West Mining Co., 15 F.M.S.H.R.C. 587 (1993). The Commission held that the Part 50 definition of "occupational injury" was "not so arbitrary as to be unreasonable." Id. at 592. Noting that its decision in Freeman United Coal Mining Co., 6 F.M.S.H.R.C. 1577 (1984), held that Part 50 regulations do not require a causal nexus between the injury and the miner's work, the Commission concluded that "it is not unreasonable for the Secretary to require the reporting of all designated injuries at mines so that MSHA can decide whether an investigation of the injury is necessary or whether regulatory action is indicated." Energy West, 15 F.M.S.H.R.C. at 592-93.
 
 
 9
 Energy West petitioned for review of the FMSHRC decision pursuant to Mine Act section 106(a), 30 U.S.C. Sec. 816(a)(1), alleging two major errors in the Commission's decision. First, Energy West contends that MSHA's interpretation of "occupational injury" in 30 C.F.R. Sec. 50.2(e) impermissibly conflicts with the language of the Mine Act and other Part 50 provisions. Second, Energy West argues that the Commission improperly abdicated its statutory duty to review policy decisions when it limited its review of 30 C.F.R. Sec. 50.2(e) to a determination of reasonableness.
 
 II. DISCUSSION
 
 10
 A. "Occupational Injury" Under Part 50 Regulations.
 
 
 11
 1. Principles of Review.
 
 
 12
 When a court reviews a regulation promulgated pursuant to statute by the agency charged with administration of that statute, the inquiry is twofold.[1] Chevron, 467 U.S. at 842-44, 104 S.Ct. at 2781-83. First, we must determine whether Congress has spoken directly to the question at issue. If so, we must give effect to the unambiguously expressed intent of Congress. Id. at 842-43, 104 S.Ct. at 2781-82. When a statute is silent or ambiguous with respect to the question at issue, however, we must ask whether the agency's interpretation is based upon a permissible construction of the statute. Id. at 843, 104 S.Ct. at 2781-82. That is, we will defer to an agency's interpretation of the statute it is charged with administering when that interpretation is reasonable. Id. at 844, 104 S.Ct. at 2782-83. Thus, in our review of the Commission decision, our first inquiry is whether the Mine Act speaks unambiguously to what constitutes an "occupational injury." See id. at 842, 104 S.Ct. at 2781.
 
 
 13
 Energy West contends that the Secretary's interpretation of the statute conflicts with the plain meaning of the Mine Act. It asserts that the reporting provisions of the Mine Act, 30 U.S.C. Sec. 813(d), (h), (j), do not authorize such a broad definition of occupational injury because each is qualified by the statement of purpose found in the Mine Act, which focuses on improving the "health and safety" of the miner. 30 U.S.C. Sec. 801(g). Energy West contends that this focus on improvement means that reportable events are limited to those which the mine operator or the Secretary of Labor are capable of preventing. But the statute expresses no such limitation. The Mine Act grants a broad delegation to the Secretary to require mine operators to provide information necessary to enable the Secretary "to perform his functions under this chapter." 30 U.S.C. Sec. 813(h). That section contains little limitation on the type of information to be provided. The statute's statement of purpose is not to be read as the strict limiting principle petitioner asserts. In fact, the Mine Act is silent as to the type of occupational injury information which should be reported in order to assist the Secretary in carrying out his duties under the Act. Obedient toChevron, when "the statute before us is 'silent or ambiguous with respect to the specific issue,' before us, we proceed to the second step" of theChevron analysis. Nuclear Info. Resource Serv. v. Nuclear Regulatory Comm'n, 969 F.2d 1169, 1173 (D.C.Cir.1992) (in banc) (quoting Chevron, 467 U.S. at 843, 104 S.Ct. at 2782). At this stage we "defer to the [Secretary's] interpretation of the statute if it is reasonable and consistent with the statute's purpose." Chemical Mfrs. Ass'n v. EPA, 919 F.2d 158, 162-63 (D.C.Cir.1990) (citing Chevron, 467 U.S. at 844-45, 104 S.Ct. at 2782-83).
 
 
 14
 Energy West contends that MSHA's definition of "occupational injury" in 30 C.F.R. Sec. 50.2(e) is unreasonable and inconsistent with the statute's purpose because it does not require a causal nexus between reportable injuries and work activity at the mine. In support, petitioner notes that both the Mine Act and related Part 50 regulations define "miner" as "any individual working in a coal or other mine." 30 U.S.C. Sec. 802(g); 30 C.F.R. Sec. 50.2(d). This definition, petitioner argues, allegedly prescribes that only injuries which befall individuals actively working in the mine are reportable, and any provision which requires reporting of non-work-related injuries is therefore unreasonable. We disagree with Energy West's cramped reading of the statute. Under Energy West's definition, an explosion in a mine which injures only workers taking their lunch break on site would not be reportable as an injury because it is not work-related. Surely, it is not unreasonable that the Secretary of Labor should be concerned with this type of injury in carrying out his duties under the Act.
 
 
 15
 We find the Secretary's definition of "occupational injury" in 30 C.F.R. Sec. 50.2(e) reasonable. Among the several duties charged to the Secretary under the Mine Act is the duty to "develop, promulgate, and revise as may be appropriate, improved mandatory health or safety standards for the protection of life and prevention of injuries in coal or other mines." 30 U.S.C. Sec. 811(a) (emphasis added). This provision focuses on the location of the injury, not the cause. Similarly, the regulation challenged here defines reportable injuries with an emphasis on situs of the injury rather than the causal nexus, requiring reporting of "any injury to a miner which occurs at a mine...." 30 C.F.R. Sec. 50.2(e) (emphasis added). It is not unreasonable for the Secretary to require reporting of all non-trivial injuries to miners which occur at the mine site in order to gather information necessary to carry out his rulemaking function under the Act. We therefore find that 30 C.F.R. Sec. 50.2(e) is a permissible construction of the Secretary's authority under the Mine Act.
 
 
 16
 2. MSHA's Interpretation of 30 C.F.R. Sec. 50.2(e).
 
 
 17
 Secondary to the argument that the regulation misinterprets the statute, petitioner contends that MSHA's interpretation of the regulation, as making reportable lost-time accidents which occur "at the mine" but are not otherwise work-related, is unreasonable. Specifically, petitioner argues that the Secretary's interpretation impermissibly conflicts with related Part 50 regulations. First, Sec. 50.20(a) requires reporting of each "occupational injury ... at the mine." 30 C.F.R. Sec. 50.20(a). Energy West asserts that, in order to give effect to each word in that regulation, "occupational" must mean something other than "at the mine." Instead, it must mean "work-related." As applied in this case, because Hammond's automobile accident injury was not work-related, petitioner's interpretation would mean that MSHA's citation was improper.
 
 
 18
 On the question of regulatory interpretation, we accord great deference to interpretations such as this one advanced by the Secretary and accepted by the Commission. Secretary of Labor v. Cannelton Indus., Inc., 867 F.2d 1432, 1435 (D.C.Cir.1989) (Secretary's interpretation of Mine Act regulations is "emphatically due" deference even when it conflicts with Commission interpretation). Our task is not to determine whether the Secretary's interpretation of the regulation charged to his administration is the one we would reach if deciding the question as a matter of first impression. Rather, we will defer to the Secretary's interpretation of his regulations unless it is clearly erroneous. Udall v. Tallman, 380 U.S. 1, 16-17, 85 S.Ct. 792, 801-02, 13 L.Ed.2d 616 (1965). Here the Secretary's interpretation by no means fails that standard.
 
 
 19
 We reject the contention that the Secretary's interpretation renders the language of Sec. 50.20(a) superfluous. Rather, the term "occupational," as construed by the Secretary, focuses on the protection of miners, as opposed to those at the mine site for other reasons. See 30 C.F.R. Sec. 50.2(e) ("[o]ccupational injury" involves only an "injury to a miner"). Injuries to trespassers or visitors are not "occupational," and thus not the concern of the Secretary under his interpretation.
 
 
 20
 Energy West also asserts that the Secretary should interpret "occupational injury" and "occupational illness" consistently. The Secretary's definition of "occupational illness" has a work-relatedness requirement. 30 C.F.R. Sec. 50.2(f) (occupational illness is any "illness or disease of a miner which may have resulted from work at a mine...."). Consequently, the Secretary should import the causal nexus requirement into his interpretation of "occupational injury." This does not necessarily follow. There are legitimate reasons why the Secretary might interpret the two provisions differently. The situs of an injury is much easier to determine than the situs of an illness. It is unnecessary to determine whether an injury is "work-related" in order to conclude that it falls within the Secretary's authority to regulate health and safety conditions at the mine. The onset of an illness as opposed to an injury is a transitory, often gradual event with little geographic definition or significance. The fact that an illness occurs in or out of the mine or both says little about the Secretary's authority to regulate related health and safety concerns. This difference between illnesses and injuries justifies, if indeed it does not suggest, a different construction of the adjective "occupational" when used to limit each of those nouns in the context of defining the Secretary's authority to regulate related health and safety concerns.
 
 
 21
 The Secretary's geographic interpretation of "occupational injury" finds further support in the Mine Act's definition of "mine." The Mine Act defines "coal or other mine" as "(A) an area of land from which minerals are extracted, ... [and], (B) private ways and roads appurtenant to such area...." 30 U.S.C. Sec. 802(h)(1) (1988). The Secretary's application of the "occupational injury" definition--an injury to a miner which occurs "at the mine"--to a miner's injury which occurs on a road leading to the mine parking lot is consistent with this statutory definition.
 
 
 22
 Petitioner also argues that MSHA's interpretation frustrates the purpose of Part 50, which it defines as computation of injury rate data. In order to develop and maintain health and safety standards in the industry, the Secretary employs information concerning occupational injuries in determining a statistical "incidence rate." See 30 C.F.R. Sec. 50.1. That incidence rate is defined as the number of injury cases per hour of employee exposure. Id. Energy West contends that dividing all injuries that occur at the mine, including those that occur before a miner reports to work, by hours of employee exposure, which includes only hours on the job, produces an inherently flawed injury incidence rate. Thus, the Secretary's interpretation here is unreasonable. While we note that the Secretary's interpretation may lead to some distortion in the incidence rate, our task is not to determine whether the interpretation results in a perfect fit. Requiring the reporting of on-site, off-the-clock injuries to miners is not unreasonable, even assuming distortion of the incidence rates, because calculating incidence rates is not the sole purpose for the reporting requirements. In addition to determining statistical rates based upon injury reports, the Secretary uses the information to determine whether measures might be taken to prevent additional injuries of the same kind. In this case, the Secretary might have concluded that a different type of guardrail would prevent future injuries of the kind suffered by Hammond. It is within his authority to require this information to carry out his statutory duty to promulgate and enforce health and safety standards.
 
 
 23
 MSHA's interpretation and the FMSHRC decision applying it are consistent with longstanding Commission precedent. In Freeman United Coal Mining Co., 6 F.M.S.H.R.C. 1577 (1984), MSHA cited a mine operator for failing to report a miner's back injury which occurred on mine property an hour before the beginning of the miner's shift as he was putting on his work boots. Id. at 1578. The Commission upheld the citation, reasoning that the regulations "do not require a showing of a causal nexus." Id. at 1579. In considering whether an agency's interpretation of its own regulations is permissible, the consistency with which that interpretation has been applied in the past weighs heavily in the agency's favor. Chemical Waste Management, Inc. v. EPA, 869 F.2d 1526, 1540 (D.C.Cir.1989). In issuing the citation here, MSHA simply concludes that causal nexus is not required under 30 C.F.R. Sec. 50.2(e). MSHA has maintained this position since at least 1984. Its position is entitled to deference as a reasonable, consistently maintained interpretation of MSHA regulations.
 
 
 24
 B. The Commission's Review of MSHA Regulations.
 
 
 25
 In affirming the citation, the Commission noted, "[our] task is not to devise the best method of monitoring injuries sustained by miners but to determine whether the Secretary's method, as implemented by the regulations, is reasonable." Energy West Mining Co., 15 F.M.S.H.R.C. at 592. Energy West contends that the Commission, in deferring to the Secretary, abdicated its duty under Mine Act section 113(d)(A)(2)(ii) to review cases involving a "substantial question of law, policy or discretion...." 30 U.S.C. Sec. 823(d)(2)(A)(ii)(IV) (emphasis added). Under this reasoning, the Commission should have visited the policy issues involved here as a matter of first impression. We disagree.
 
 
 26
 The Commission drew its deferential standard of review of the Secretary's interpretation from its prior decision in Consolidated Coal Co., 14 F.M.S.H.R.C. 956, 969 (1992). That case involved review of the Secretary's method for determining injury incident rates. In upholding the Secretary's interpretation there, the Commission noted, "[o]ur task is not to determine the best method of calculating incident rates, but to determine whether the Secretary's interpretation of the reporting regulation is reasonable...." Id. Consequently, the Commission's review of the Secretary's interpretation, like ours, is limited to a determination of reasonableness. The Commission did not err in applying that standard.
 
 
 27
 We have already recognized that the Commission owes the Secretary such deference in Secretary of Labor v. Cannelton Indus., Inc., 867 F.2d 1432 (D.C.Cir.1989). There, we reversed a decision of the Commission because it "failed to extend the appropriate deference to the Secretary's interpretation of her own regulations and of the Mine Act." Id. at 1439 (emphasis added). As we further stated in Cannelton Indus., in deciding issues of the interpretation of the Mine Act, "[t]he question for this court and the Commission is whether the Secretary's interpretation is 'a permissible construction of the statute.' " Id. at 1435 (quoting Chevron, 467 U.S. at 843, 104 S.Ct. at 2782) (emphasis added).
 
 
 28
 Petitioner argues that the Commission should not afford deference to the Secretary's interpretation because Congress has afforded the Commission itself a policymaking role under 30 U.S.C. Secs. 823(d)(2)(A)(ii)(IV) and 823(d)(2)(B).
 
 
 29
 The first of those two subsections merely states that the petitioner may call upon the Commission's power of discretionary review over a decision of an administrative law judge where "a substantial question of law, policy or discretion is involved." 30 U.S.C. Sec. 823(d)(2)(A)(ii)(IV).
 
 
 30
 The second of the subsections provides that the Commission may on its own motion order a case for review where "the decision may be contrary to law or Commission policy, or that a novel question of policy has been presented." 30 U.S.C. Sec. 823(d)(2)(B). Neither of these paragraphs offers a convincing argument that Congress intended to deprive the Secretary of the deference which we in Cannelton Indus. and the Commission in Consolidated Coal have previously afforded its interpretations of the Act.
 
 
 31
 We conclude, therefore, that the Commission's deferential approach to the Secretary's interpretation is well grounded in both administrative and circuit precedent. It affords no basis for reversal.
 
 III. CONCLUSION
 
 32
 In summary, we hold that the Secretary's definition of "occupational injury" in Sec. 50.2(e) of MSHA regulations is a reasonable interpretation of Mine Act reporting provisions. We also hold that the Secretary's interpretation here, requiring reporting of all injuries to miners at the mine regardless of causal nexus, is a permissible interpretation of Sec. 50.2(e). Having determined that the citation issued to Energy West was properly issued, we affirm the Commission's decision.
 
 
 
 [1]
 Although technically promulgated by the Secretary of the Interior, the Part 50 regulations were adopted by the Secretary of Labor after enforcement authority over mine safety was transferred to the Department of Labor by the Mine Act. Our review proceeds as if these regulations were originally promulgated by the Secretary of Labor